# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| **GREGORY and KRISTI PICKETT,** Individually and as Next Friends of **SCOTT PICKETT,** | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | No. 2:18-cv-00075-D |
| **CITY OF PERRYTON, TEXAS, and SERGEANT HECTOR VILLARREAL,** | § § § § § | |
| Defendants. | § § | |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

SPROUSE SHRADER SMITH P.L.L.C.
John Massouh, State Bar No. 24026866
Blair Saylor Oscarsson, State Bar No. 24056073
701 S. Taylor, Ste. 500
Amarillo, Texas 79105-5008
(806) 468-3300; (806) 373-3454 fax

/s/   *Blair Saylor Oscarsson*

**ATTORNEYS FOR DEFENDANTS CITY OF PERRYTON AND SERGEANT HECTOR "DIEGO" VILLARREAL**

# Table of Contents

**Page**

Table of Contents ....................................................................................................................... ii

Table of Authorities ................................................................................................................. iii

Summary Judgment Evidence .................................................................................................... 1

Undisputed Facts ........................................................................................................................ 1

Argument .................................................................................................................................... 3

I.  Scott Pickett did not sustain a constitutional injury, so his parents have no claim for excessive force against the City of Perryton or Sergeant Villarreal. ................................ 3

   A.  The City of Perryton has no *Monell* liability. ............................................................ 3

   B.  Sergeant Villarreal is entitled to qualified immunity ................................................ 4

   C.  Scott Pickett's Fourth Amendment rights were not violated .................................... 4

II. No Policy, Custom or Practice of the City was a Moving Force Behind any Such Alleged Constitutional Injury as Required by *Monell* ................................................... 7

   A.  Sergeant Villarreal was Adequately Trained and Supervised. ............................... 10

   B.  An Isolated or Single Incident Does Not Establish a Custom or Policy ................ 12

III. Plaintiffs have no evidence on essential elements of their claims ..................................... 13

Conclusion ................................................................................................................................ 14

Prayer ................................................................................................**Error! Bookmark not defined.**

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ............................................................................................... 8
*Baker v. Putnal,* 865 F.Supp. 389 (S.D. Tex. 1994) ................................................. 3
*Baker v. Putnal,* 75 F.3d 190 (5th Cir. 1996) ............................................. 3, 10, 11
*Beattie v. Madison Cnty. Sch. Dist.*,
   254 F.3d 595 n.2 (5th Cir. 2001) ........................................................................ 8
*Benavides v. County of Wilson*,
   955 F.2d 968 (5th Cir. 1992), *cert. denied*, 506 U.S. 824 (1992) ................... 9, 11
*Bennett v. City of Slidell*,
   728 F.2d 762 (5th Cir. 1984), *cert. denied*,
   472 U.S. 1016 (1985) ..................................................................................... 7, 12
*Board of Cnty. Comm'rs of Bryan Cnty. v. Brown*,
   520 U.S. 397 (1997) ........................................................................................ 3, 8
*Brown v. Bryan Cnty.*,
   219 F.3d 450 (5th Cir. 2000) ............................................................................ 11
*Brown v. Lyford*,
   243 F.3d 185 n.18 (5th Cir. 2001) ...................................................................... 3
*Burge v. Parish of St. Tammany*,
   187 F.3d 452 (5th Cir. 1999) .............................................................................. 7
*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .......................................................................................... 13
*City of Canton v. Harris*,
   489 U.S. 378 (1989) ............................................................................... 8, 10, 12
*City of Los Angeles v. Heller*,
   475 U.S. 796 (1986) (per curiam) ...................................................................... 3
*City of Oklahoma City v. Tuttle*,
   471 U.S. 808 (1985) .......................................................................................... 12
*Collins v. City of Harker Heights, Tex.*,
   503 U.S. 115 (1992) ............................................................................................ 3
*Cousin v. Small*,
   325 F.3d 627 (5th Cir.), *cert. denied sub nom.*,
   *Cousin v. Berry*, 540 U.S. 826 (2003) ................................................. 8, 9, 10, 12
*Estate of Davis* v. *City of North Richland Hills*,
   (2005 WL 827129) (5th Cir. 2005) ............................................................. 12, 13
*Estelle v. Gamble*, 429 U.S. 97 (1976) ..................................................................... 8
*Forgan v. Howard Cnty., Tex.*, 494 F.3d 518 (5th Cir. 2007) ................................... 9
*Fraire v. City of Arlington*,
   957 F.2d 1268 (5th Cir.), *cert. denied*, 506 U.S. 973 (1992) ............................. 12
*Gabriel v. City of Plano*,
   202 F.3d 741 (5th Cir. 2002) ............................................................................ 12

*Gonzales v. Westbrook*,
  118 F.Supp.2d 728 (W.D. Tex. 2000) ................................................................................ 11
*Hinshaw v. Doffer*,
   785 F.2d 1260 (5th Cir. 1986) ......................................................................................... 11
*Huong v. City of Port Arthur*,
  961 F.Supp. 1003 (E.D. Tex. 1997) .................................................................................. 11
*Languirand v. Hayden*, 717 F.2d 220 (5th Cir. 1983) ............................................................ 9
*Malley v. Briggs*, 475 U.S. 335, 341 (1986) ........................................................................... 4
*Monell v. New York City Dep't of Social Serv.*,
  436 U.S. 658 (1978) .............................................................................................. 3, 6, 7
*Mullenix v. Luna*, 136 S. Ct. 305, 311 (2015) ........................................................................ 5
*Pembaur v. City of Cincinnati*,
  475 U.S. 469 ..................................................................................................................... 7
*Pineda v. City of Houston*,
  291 F.3d 325 (5th Cir. 2002) ............................................................................................ 7
*Piotrowski v. City of Houston*,
  237 F.3d 567 (5th Cir. 2001) ............................................................................................ 7
*Reese v. Anderson*,
   926 F.2d 494 (5th Cir. 1991) ........................................................................................... 5
*Rhyne v. Henderson County*,
  973 F.2d 386 (5th Cir. 1992) .......................................................................................... 11
*Richardson v. Conroe*,
  582 F.2d 19 (5th Cir. 1978) .............................................................................................. 5
*Roberts v. City of Shreveport*, 397 F.3d 287 (5th Cir. 2005) .................................................. 9
*Salazar-Limon v. City of Houston*,
   826 F.3d 272, 277 (5th Cir. 2016)
   *cert. denied*, No. 16-515, 2017 U.S. LEXIS 2627 (U.S., Apr. 24, 2017) .................. 4, 5, 6
*Scott v. Harris*, 550 U.S. 372 (2007) ..................................................................................... 2
*Sims v. Adams*,
  537 F.2d 829 (5th Cir. 1976) .......................................................................................... 10
*Smith v. Brenoettsv*,
  158 F.3d 908 (5th Cir. 1998) .......................................................................................... 10
*Spiller v. City of Texas City,*
  130 F.3d 162 (5th Cir.1997) ............................................................................................ 8
*Tennessee vs. Garner*,
  471 U.S. 1 (1985) .............................................................................................................. 4
*Webster v. City of Houston*,
  735 F.2d 838 (5th Cir. 1984)(*en banc*) .......................................................................... 12

TO THE HONORABLE COURT:

COME NOW City of Perryton and Sergeant Hector "Diego" Villarreal, Defendants, and file this Brief in support of their Motion for Summary Judgment as follows:

## SUMMARY JUDGMENT EVIDENCE

Defendants offer and incorporate the following summary judgment evidence, which is contained in the Appendix to Defendants' Motion for Summary Judgment and Brief in Support. Such evidence shows that there is no genuine issue of dispute requiring a trial.

| Exhibit A | App.1—20 | Deposition of Scott Pickett |
| Exhibit B | App.21 | Enhanced video of incident |
| Exhibit C | App.22—96 | Deposition of Kristi Pickett, including deposition exhibits 1, 4, and 6 |
| Exhibit D | App.97—208 | Deposition of Officer Joey Odom |
| Exhibit E | App.209—309 | Deposition of Officer Scott Steward |
| Exhibit F | App.310—338 | City of Perryton Policy Manual, Ch. 6 "Use of Force" |
| Exhibit G | App.339—516 | Deposition of Sergeant Hector "Diego" Villarreal, including deposition exhibit 20 |
| Exhibit H | App.517—576 | Deposition of Chief William "Tony" Hill |

## UNDISPUTED FACTS

Reports of an agitated man with a handgun, wearing camouflage and a bulletproof vest, marching toward the junior high were received by the Perryton Police Department during school drop-off on the morning of May 2, 2016. App.6, 11, 13, 67, 94-96, 126, 141, 235. Perryton Police Department Officer Scott Steward responded and activated his dash and body cams. App.240. Steward located a man matching the description marching in the street a few blocks south of the junior high. App.141, 238-239. Steward exited his marked patrol vehicle with his duty handgun drawn. App.240-41. Officer Steward commanded the man to put his hands in the air, and initially, the man complied. App.241.

Sergeant Hector "Diego" Villarreal and Officer Joey Odom[1] arrived seconds later and exited their patrol vehicle. App.244. Then the man threw down his hat, turned toward Sergeant Villarreal, crouched down in a "shooter's position," pulled a black handgun from his waist, and raised it toward Sergeant Villarreal. App.21, 245, 250, 143-44, 158, 430-443. Sergeant Villarreal fired his duty weapon at the man, striking him in the shoulder and thigh. App. 13-14, 447. Officers learned the man was Scott Pickett.

When he arrived in the emergency room, Mr. Pickett admitted that he should not have pulled the gun out, and he apologized to Officer Odom who had accompanied Pickett to the hospital. App.163-64. Mr. Pickett testified he told Texas Ranger Smith that he "made a big mistake" and that he "should have left that gun at [his] house." App.13-14. Mr. Pickett admitted in his deposition that he pulled the gun out, though he says he pulled out the gun in response to police instructions to "drop that gun." App.14. *Compare* App.21 (dash cam video clearly showing an officer instructing Pickett to "Drop it! Get on the ground!"; Pickett turning towards Sergeant Villarreal, crouching, and pulling a gun out of his waist area) *and* App.154; *see also Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (dash cam footage was so clear that no reasonable jury could accept the plaintiff's version of events).

Thankfully, Mr. Pickett survived and recovered from his physical injuries. App.14. Officers later determined that Mr. Pickett's gun was a pellet gun and his "bulletproof" vest was pretend. App.470. Mr. Pickett's mother testified that he has a "mental age" of ten-to-twelve years old, has cerebral palsy, and is mentally disabled. App.31. His family had given him the gun and pretend bulletproof vest to play with as toys. App.9, 57-58, 62, 67, 94-96.

---

[1] It was Officer Odom's first day on the job, but since he had not yet been sworn in, he had not been issued a uniform or duty weapon. Officer Odom and Sergeant Villarreal were actually on their way to Odom's swearing-in when they got this call. App.124-126.

**ARGUMENT**

I. Scott Pickett did not sustain a constitutional injury, so his parents have no claim for excessive force against the City of Perryton or Sergeant Villarreal.

    A. The City of Perryton has no *Monell* liability.

In order for the City of Perryton to be held liable under § 1983, its officials must have perpetrated a constitutional wrong when executing a policy or custom. *See Monell v. New York City Dep't of Social Serv.,* 436 U.S. 658, 694 (1978); *Baker v. Putnal,* 75 F.3d 190 (5th Cir. 1996). Thus, the City cannot be liable unless one of its employees has committed a constitutional violation. *See Board of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 404 (1997) (a plaintiff must show a "direct causal link between the municipal action and the deprivation of federal rights" before a municipality may be held liable under 42 U.S.C. § 1983); *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam) ("[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized [unconstitutional action] is quite beside the point.") (emphasis in original); *Brown v. Lyford*, 243 F.3d 185, 191 n.18 (5th Cir. 2001) (citing *Heller's* holding that "if no claim is stated against officials—if plaintiff does not show any violation of his constitutional rights—then there exists no liability to pass through to the county").

Analysis of a § 1983 claim against a municipality requires two distinct inquiries: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the city is responsible for that violation. *Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 120 (1992). With regard to the first element, the Court must review the conduct of the officer to determine whether he inflicted a constitutional injury. *See Baker v. Putnal,* 865 F.Supp. 389, 395-96 (S.D. Tex. 1994). Specifically, the Fourth Amendment allows an officer to use deadly force when he "has

probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *See Tennessee vs. Garner*, 471 U.S. 1, 11 (1985).

  B. Qualified Immunity of Sergeant Villarreal

Sergeant Villarreal was sued in his individual capacity and has asserted the defense of qualified immunity. *See* Pls.' Orig. Compl. at ¶¶ 1.3, 3.3 (Doc. 1); Defs.' Orig. Answer at ¶ 61 (Doc. 7). When evaluating a qualified immunity defense, the court "conducts a well-known two-prong inquiry. In order to overcome a qualified immunity defense, a plaintiff must allege a violation of a constitutional right, and then must show that the right was clearly established in light of the specific context of the case." *Salazar-Limon v. City of Houston*, 826 F.3d 272, 277 (5th Cir. 2016) *cert. denied*, No. 16-515, 2017 U.S. LEXIS 2627 (U.S., Apr. 24, 2017) (citations and quotations omitted). "Thus, at summary judgment, it is the plaintiff's burden to rebut a claim of qualified immunity once the defendant has properly raised it in good faith. And this is a demanding standard. Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986).) "Moreover, this burden is not satisfied with some metaphysical doubt as to material facts by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Id.*

  C. Scott Pickett's Fourth Amendment rights were not violated.

In this case, the evidence proves that the use of deadly force was reasonable. At the time of the shooting, officers were responding to calls regarding a man wearing camouflage and a bulletproof vest marching near the junior high with a gun. Officer Steward was first to locate a man matching that description near the junior high. Across the street from where officers found Pickett, a woman was getting an infant out of a car. App.430-32.

When additional officers Villarreal and Odom arrived to the scene, Scott Pickett failed to follow officer commands, crouched in a defensive position, pulled a gun out of his waistband area, and raised the gun toward Sergeant Villarreal. App.21, 96, 131-132, 142, 144, 154, 440, 430-443. Perceiving the threat from Pickett's gun when he pulled it out of his waistband, Villarreal fired his duty weapon to protect himself, the woman and baby across the street, and his fellow officers. App.430-443.

Sergeant Villarreal's use of deadly force was reasonable because Sergeant Villarreal had reason to believe Pickett posed a serious immediate threat of harm to himself and others. *Id.*; *see Salazar-Limon*, 826 F.3d at 278. Sergeant Villarreal was not required "in a tense and dangerous situation to wait until the moment [Pickett] *use[d]* a deadly weapon to act to stop [him]." *Mullenix v. Luna*, 136 S. Ct. 305, 311 (2015) (quotation omitted) (emphasis added). There is *no evidence* that Scott Pickett did *not* reach to his waistband and retrieve a gun; therefore Sergeant Villarreal's decision to shoot was not an unreasonable or excessive use of deadly force. *See Salazar-Limon*, 826 F.3d at 278. Accordingly, Scott Pickett's Fourth Amendment rights were not violated, and Sergeant Villarreal is entitled to qualified immunity.

The facts of this case are similar to other Fifth Circuit cases involving allegations of excessive force where no constitutional injury was found. Specifically, when analyzing an officer's conduct and evaluating whether the officer had probable cause to believe the suspect posed a threat of serious harm before using force, the Fifth Circuit considers refusal to comply with officers' commands and suspicious actions, such as reaching for the waistband. *Salazar-Limon*, 826 F.3d at 279; *see also Richardson v. Conroe,* 582 F.2d 19 (5th Cir. 1978) (individual refused to cooperate and drew a gun on the officer); *Reese v. Anderson,* 926 F.2d 494 (5th Cir. 1991) (after high speed chase, individual repeatedly refused to comply with officer's orders and lowered his hands out of sight).

In *Salazar-Limon v. City of Houston*, Mr. Salazar-Limon was stopped by Houston police on suspicion of DWI. *Salazar-Limon*, 826 F.3d at 275. Mr. Salazar-Limon exited his vehicle and began to walk away from the officer. *Id.* The officer pulled out his handgun and ordered Mr. Salazar-Limon to stop, but Salazar-Limon did not immediately comply. *Id.* Mr. Salazar-Limon then "turn[ed] left and reach[ed] toward his waistband…" *Id.* The officer testified that "he perceived the combination of Salazar's actions to be consistent with a suspect retrieving a weapon from his waistband", and the officer shot Mr. Salazar-Limon, partially paralyzing him. *Id*. Upon inspection, Mr. Salazar-Limon was unarmed. *Id*. The Fifth Circuit found that the officer was entitled to qualified immunity and dismissed the claims against the officer and the *Monell* claims against the City of Houston.

In this case, Scott Pickett actually retrieved a gun from his waistband and raised it toward Sergeant Villarreal. App.21,143-144, 250, 443, 457. Every officer present felt an immediate, serious threat. App.158, 227, 457, Sergeant Villarreal testified that he was afraid that Scott Pickett would shoot him, the other officers, or the woman and infant. He puffed his chest forward so his Kevlar vest would cover him because he thought he was about to be shot. App.457. Officer Steward testified that when he saw the gun and heard gunshots, he thought Scott Pickett *did* shoot Sergeant Villarreal. App.277. Officer Odom testified that he felt threatened when Mr. Pickett "pulled the pistol out of the right side and came up[.]" App.158.

Accordingly, Defendants have conclusively proven that the force used was reasonable under the circumstances, and Scott Pickett suffered no constitutional injury. The Court should grant summary judgment to Defendants.

## II. No Policy, Custom, or Practice of the City was a Moving Force Behind any Such Alleged Constitutional Injury as Required by *Monell*

As stated above, the Court must find that a claimant sustained some type of constitutional injury at the hands of a municipal employee to find a municipality liable for § 1983 claims. *See Monell*, 436 U.S. at 694. If, for some reason, the Plaintiffs can overcome that hurdle, they cannot make the next one: that a custom or policy of the City caused the injury. In other words, for the City to be held liable under § 1983, its policy-making officials must have perpetrated a constitutional violation through its policy or custom. *See id.* A governmental <u>policy</u> exists if conduct of a governmental employee is officially sanctioned or ordered by a governmental decision-maker. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481; *see also Burge v. Parish of St. Tammany,* 187 F.3d 452, 470-71 (5th Cir. 1999). On the other hand, a <u>custom</u> may be inferred only if a governmental employee engages in acts that, although not formally approved by an appropriate decision-maker, are so widespread they have the force of law. *Brown,* 520 U.S. at 404.

Where a municipality is the defendant, the burden is on the plaintiff to prove the additional elements of: (1) the existence of an unconstitutional policy, custom, or practice of the municipality, that (2) caused the deprivation of rights complained of, and (3) that the acts complained of were authorized or ratified by a policy-maker with final policymaking authority, or were taken pursuant to this unconstitutional policy, custom, or practice. *Bennett v. City of Slidell*, 728 F.2d 762, 770 (5th Cir. 1984), *cert. denied,* 472 U.S. 1016 (1985). Entity liability under § 1983 requires the unconstitutional conduct alleged "be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Therefore, to hold a government unit liable, a plaintiff must demonstrate that a policy-making governmental

official has knowledge of an alleged unconstitutional custom. *Pineda v. City of Houston,* 291 F.3d 325, 330 (5th Cir. 2002). Even so, vague attributions of knowledge to unidentified individuals in management or within the chain of command are insufficient to establish constructive knowledge against a municipality and thus insufficient to hold a city liable. *Id.* Additionally, an entity cannot be held liable for its employees' alleged violation of policy under a theory of *respondeat superior*. *See Beattie v. Madison Cnty. Sch. Dist.,* 254 F.3d 595, 600 n.2 (5th Cir. 2001).

Further, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, that the municipality was the "moving force" behind the injury alleged." *Board of Cnty. Comm'rs of Bryan Cnty., Oklahoma,* 520 U.S. at 404. Moreover, "[t]he description of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City,* 130 F.3d 162, 167 (5th Cir. 1997). Where the non-moving party has presented evidence to support the essential elements of its claims but that evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

Alternatively, if a plaintiff cannot demonstrate that a defendant intentionally deprived a plaintiff of a constitutionally-protected right or a defendant at least acted with deliberate indifference, a plaintiff cannot prove a constitutional violation. *See Estelle v. Gamble,* 429 U.S. 97, 105-06 (1976). A plaintiff cannot show deliberate indifference by merely alleging that an existing supervision or training program represents a policy for which a governmental entity is liable or that the incident could have been avoided had the officer received more or better supervision or training. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989). The focus must be on the adequacy of the supervision

or training in relation to the task the particular officer must perform. *Id.* at 390. Moreover, the deficiency must have actually caused the officer to violate another's constitutional right. *Id.* at 391.

To establish deliberate indifference in this context, "a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003) (internal quotation omitted) *cert. denied sub nom., Cousin v. Berry*, 540 U.S. 826 (2003); *see also Languirand v. Hayden*, 717 F.2d 220, 227-28 (5th Cir. 1983) ("[A] municipality is not liable under section 1983 for the negligence or gross negligence of its subordinate officials, including its chief of police, in failing to train the particular officer in question, in the absence of evidence at least of a pattern of similar incidents in which citizens were injured or endangered by intentional or negligent police misconduct and/or that serious incompetence or misbehavior was general or widespread throughout the police force."). "[F]or liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). "Proof of a single incident generally will not support a finding of inadequate training as a matter of custom or policy." *Forgan v. Howard Cnty., Tex.*, 494 F.3d 518, 522 (5th Cir. 2007).

In this case, Plaintiffs merely recite the words "deliberate indifference" in their pleadings without any factual allegations or evidence to support any assertion that Defendants disregarded a known or obvious consequence of their actions. *See* ¶ 20, *Pls' 2d Amended Orig. Compl.* Thus, no genuine fact question concerning the existence of a deliberately indifferent policy exists. *Benavides v. County of Wilson*, 955 F.2d 968 (5th Cir. 1992), *cert. denied*, 506 U.S. 824 (1992) (finding no evidence of a deliberately indifferent policy where the county and sheriff established compliance

with state requirements and plaintiff produced only conclusory statements that these standards were inadequate).

Here, there is no summary judgment evidence establishing that Chief Hill, Sergeant Villarreal, or any other official or employee was deliberately indifferent to the likelihood that a City of Perryton employee would violate Scott Pickett's constitutional rights. The evidence does not show anything that would indicate that Villarreal did not have adequate training in the use of force. To the contrary, the evidence shows that he had extensive training in this area. App.348-49, 509-516.

Plaintiffs cannot come forward with any competent summary judgment evidence of any policy, practice, or custom of the City of using excessive force. *See* App.80-81. Nor can Plaintiffs produce any evidence of actual or constructive knowledge of any custom or practice among the City officers in using excessive force in that regard. *Id.* In their pleadings, Plaintiffs allege that the City had a "practice of hiring officers with records of excessive force, excessive alcohol use and erratic behavior," but they have identified <u>no</u> policy or custom that was the moving force behind Scott Pickett's alleged deprivation. City of Perryton policy was to use only that force that is necessary to effect a detention or arrest. App.310-338, 563-567. This policy is in compliance with established constitutional requirements. *See id.*

### A. Sergeant Villarreal was Adequately Trained and Supervised.

A local government may be held liable under 42 U.S.C. § 1983 when a supervisory official "breaches a duty imposed by state or local law, and this breach causes plaintiff's constitutional injury." *Smith v. Brenoettsv*, 158 F.3d 908, 911 (5th Cir. 1998) (citing *Sims v. Adams*, 537 F.2d 829 (5th Cir. 1976). It is not enough to simply show a lack of training. To succeed on a claim of failure to train, Plaintiffs must demonstrate that (1) the Defendant failed to train the officer involved; (2) there is a causal connection between the alleged failure to train and the alleged violation of Scott Pickett's

rights; and (3) the failure to train constituted deliberate indifference to Scott Pickett's constitutional rights. *See Cousin v. Small*, 325 F.3d at 637.

Only if a failure to train actually causes an injury may it, in certain very limited circumstances, fairly be said to represent a policy for which a municipality may be held responsible. *City of Canton,* 489 U.S. at 390; *Baker,* 75 F.3d at 200. The basis for liability under such circumstances is dependent upon the degree of fault evidenced by the municipality's action or inaction. *Brown v. Bryan Cnty.,* 219 F.3d 450, 459 (5th Cir. 2000). Only where the failure to train or supervise its employees in a relevant aspect evidences a "deliberate indifference" to the rights of its constituents can such a shortcoming be properly thought of as an actionable governmental "policy or custom." *Harris,* 489 U.S. at 389; *Hinshaw v. Doffer,* 785 F.2d 1260, 1262 (5th Cir. 1986).

The City has affirmatively proven that its training provides no basis for liability. "[A]ll that is required for a municipality to prevail in a claim based on inadequate training is compliance with state mandated training standards for its officers." *Huong v. City of Port Arthur*, 961 F.Supp. 1003, 1007 (E.D. Tex. 1997); *accord Gonzales v. Westbrook*, 118 F.Supp.2d 728, 737 (W.D. Tex. 2000). When state law mandates the training required of a city's officers, as in Texas, and the offers are trained according to the state law mandate, a plaintiff generally cannot satisfy the elements to support a claim of inadequate training. *See e.g. Baker*, 75 F.3d at 199; *Benavides*, 955 F.2d at 973. Training regarding the force continuum and use of force is precisely the type of basic police training the State of Texas assures all the state's police officer trainees receive.

Defendants' summary judgment evidence clearly shows Sergeant Villarreal was experienced and well-trained, in accordance with constitutional requirements. App.509-516. His training includes procedures relating to the use of force continuum and excessive force. *See id*; App.269-271, 467-468. Plaintiffs cannot come forward with any evidence, as opposed to bare allegations and conclusions,

concerning an insufficient level of training or supervision that Sergeant Villarreal possessed or why it would be obvious that a constitutional violation would result from such lack of training or supervision. Therefore, there is not a genuine fact question concerning inadequate training or supervision, and the Court should grant summary judgment to Defendants. *See Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992).

### B. An Isolated or Single Incident Does Not Establish a Custom or Policy

Importantly, an isolated incident is generally insufficient to establish the existence of a policy or custom. *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 824 (1985); *Fraire v. City of Arlington,* 957 F.2d 1268, 1278 (5th Cir.), *cert. denied,* 506 U.S. 973 (1992). "Isolated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for municipal § 1983 liability." *Bennett,* 728 F.2d at 768 n.3. A policy cannot be inferred simply because of an isolated constitutional deprivation. *Webster v. City of Houston,* 735 F.2d 838, 851 (5th Cir. 1984) (*en banc*). Therefore, it is nearly impossible for a plaintiff to establish deliberate indifference sufficient to subject a governmental entity to liability on the basis of a single incident. *See Gabriel v. City of Plano,* 202 F.3d 741, 745 (5th Cir. 2002). Plaintiffs must forward with considerably more proof than a single incident to "establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." *See City of Oklahoma City*, 471 U.S. at 813; *City of Canton*, 489 U.S. 378.

Furthermore, there are no facts that demonstrate a prior pattern by the involved officer of violating constitutional rights by using deadly force. In *Estate of Davis* v. *City of North Richland Hills*, (2005 WL 827129) (5th Cir. 2005) the Court stated:

> "[w]e have stressed that a single incident is usually insufficient to demonstrate deliberate indifference. In *Cousin v. Small*, for example, we held that "[t]o succeed on his claim of failure to train or supervise" the plaintiff must demonstrate deliberate

indifference, which usually requires a plaintiff to "demonstrate a pattern of violations." Similarly, in *Snyder v. Trepagnier*, we held that "proof of a single incident ordinarily is insufficient" for liability. Rather, the "plaintiff must demonstrate 'at least a pattern of similar incidents in which the citizens were injured.' Moreover, a showing of deliberate indifference requires that the Plaintiffs show that the failure to train reflects a 'deliberate' or 'conscious' choice to endanger constitutional rights.

**Prior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question.** That is, notice of a pattern of similar violations is required. While the specificity required should not be exaggerated, our cases require that the prior acts be fairly similar to what ultimately transpired and, in the case of excessive use of force, that the prior act have involved injury to a third party."

*Estate of Davis* at 4 (citations omitted) (emphasis added).

Just as in *Estate of Davis*, Plaintiffs here present absolutely no facts that indicate prior use of deadly force against a third-party resulting in injury or death. To the contrary, the undisputed evidence is, that in Sergeant Villarreal's 22-year law enforcement career, he has fired his weapon in the line of duty only once before this incident—at a vicious dog. App.449. The other "bad" acts of Sergeant Villarreal are irrelevant and were unknown to the City prior to this incident, were not similar to this incident, and did not involve injury to a third party. App.538-539, 568-569.

### III. Plaintiffs have no evidence on essential elements of their claims

A party moving for summary judgment may support that motion with appropriate evidence in an attempt to negate an essential element of the non-movant's claim or defense, but summary judgment is also appropriate when the movant shows that there is no evidence to support an essential element of the non-movant's claim or defense. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In order to withstand a no-evidence motion for summary judgment, the non-movant must present evidence sufficient to establish the existence of each element of his claim as to which he will have the burden of proof at trial. *Id.* Summary judgment is appropriate when a party fails to establish

the existence of an essential element of its case, on which that party will bear the burden of proof at trial. *Id.*

Defendants are entitled to summary judgment on all of Plaintiffs' claims because Plaintiffs have no evidence to support the following necessary elements of their claims against Defendants:

A. That Scott Pickett sustained a constitutional injury.

B. That any policy, custom, or practice of the City of Perryton was a moving force behind a constitutional injury.

C. That Sergeant Villarreal was not adequately trained or supervised.

D. That Sergeant Villarreal had a prior pattern of violating constitutional rights by using excessive or deadly force.

## CONCLUSION

Because Scott Pickett did not sustain a constitutional injury, his parents have no claim for excessive force against the City of Perryton or its officer. The City of Perryton had no policy, custom, or practice that was a moving force behind Mr. Pickett's alleged constitutional injury, so the City is not liable under *Monell*. Further, Sergeant Villarreal is entitled to qualified immunity because he did not use force excessive to the need. The undisputed evidence is that Sergeant Villarreal was adequately trained and supervised, and an isolated custom or a single incident cannot establish a custom or policy. Accordingly, Defendants are entitled to summary judgment.

## PRAYER

WHEREFORE, Defendants City of Perryton, Texas, and Sergeant Hector "Diego" Villarreal pray for judgment that Plaintiffs Gregory Pickett and Kristi Pickett take nothing, for costs, and for general relief.

Respectfully submitted,

SPROUSE SHRADER SMITH P.L.L.C.
John Massouh, State Bar No. 24026866
Blair Saylor Oscarsson, State Bar No. 24056073
701 S. Taylor, Ste. 500
P. O. Box 15008
Amarillo, Texas 79105-5008
(806) 468-3300; (806) 373-3454 fax

/s/   *Blair Saylor Oscarsson*
**ATTORNEYS FOR DEFENDANTS CITY OF PERRYTON AND SERGEANT HECTOR "DIEGO" VILLARREAL**

# **CERTIFICATE OF SERVICE**

I hereby certify that on **April 8, 2019**, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system will send a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

**ATTORNEYS FOR PLAINTIFFS:**

| | |
|---|---|
| William D. Hamker<br>Attorney at Law<br>1800 S. Washington, Ste. 110<br>Amarillo, Texas 79102<br>Email: whamker@gmail.com | *Via Email* |
| J. Daren Brown<br>Stockard Johnston Brown & Netardus, P.C.<br>1030 N. Western<br>Amarillo, Texas 79106<br>Email: dbrown@sjblawfirm.com | *Via Email and Hand-Delivery* |

/s/   *Blair Saylor Oscarsson*
Blair Saylor Oscarsson