## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| **GREGORY and KRISTI PICKETT,** | § | |
| **Individually and as Next Friends of** | § | |
| **SCOTT PICKETT,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 2:18-cv-00075-Z-BP** |
| | § | |
| **CITY OF PERRYTON, TEXAS and** | § | |
| **SERGEANT HECTOR VILLARREAL,** | § | |
| | § | |
| **Defendants.** | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court are Defendants' Motion for Summary Judgment, Brief in Support, and Appendix, ECF Nos. 15-17, filed on April 8, 2019; Plaintiff's Response, Brief in Support, and Appendix, ECF Nos. 18-20, filed on April 29, 2019; and Defendant's Reply, ECF No. 24, filed on May 13, 2019. Senior United States District Judge Sidney A. Fitzwater referred this case to the undersigned by Order entered on May 2, 2018. ECF No. 5. By Special Order 3-327, the case was reassigned to United States District Judge Matthew J. Kacsmaryk on August 1, 2019. ECF No. 33. Based upon a full review of the relevant pleadings on file and applicable legal authorities, the undersigned **RECOMMENDS** that Judge Kacsmaryk **GRANT** in part and **DENY** in part Defendants' Motion for Summary Judgment, ECF No. 15.

## I.    BACKGROUND

Gregory and Kristi Pickett ("Plaintiffs"), individually and as next friends of their son Scott Pickett ("Pickett"), bring this suit against Sergeant Hector Villarreal ("Villarreal") and the City of Perryton, Texas ("the City") for damages due to injuries Pickett sustained during an arrest on May

2, 2016. ECF No. 1. On that day, Pickett was twenty years old. ECF No. 1 at 4. He had been diagnosed with cerebral palsy and had the mental capacity of a ten to twelve-year-old child. ECF No. 19 at 7. That morning, he walked to Pak-A-Sak, a local convenience store, to purchase a soft drink. ECF No. 1 at 4. He took his pellet pistol with him to protect himself from a dog near the store that frightened him. *Id.* While he was walking back home from the store, Perryton Police Department Officer Scott Steward ("Steward'), who was on duty as a patrol officer, received a report of a male subject with a handgun, wearing camouflage and body armor, walking towards a school. *Id.* Upon observing Pickett on foot near 9th Street and Fordham Street, Steward parked his vehicle, drew his handgun, and gave verbal commands to Pickett. *Id.* at 5. Pickett complied and raised his hands in the air. ECF No. 19 at 13.

Villareal and Officer Joey Odom ("Odom") arrived seconds later and exited their patrol car. ECF Nos. 16 at 6 and 20 at 16, Villarreal Body-Cam Video. After removing his ball cap and dropping his drink, Pickett turned and faced Villarreal and Odom as they also began to verbally command him to "drop it" and "get on the ground." ECF Nos. 16 at 6, 19 at 13, and 17 at 21, Enhanced Video. Pickett then began to lie down on the ground while removing the pellet gun from his right pants pocket. ECF No. 17 at 21, Enhanced Video. He moved his hand with the gun forward in an underhand fashion in the direction of Villarreal and Odom. At that moment, Villarreal fired at Pickett eight times, striking him twice, once in his shoulder and once in his thigh. *Id.*; ECF Nos. 1 at 5 and 16 at 6.

The parties dispute what happened leading up to the shooting. Defendants contend that Villarreal only began firing at Pickett after he had crouched down in a "shooter's position" and raised the pellet gun toward Villarreal. ECF No. 16 at 6. Defendants stress that the police officers present at the scene testified they had felt an immediate, serious threat, and note Villarreal's

testimony that he was afraid that Pickett might shoot him, the other officers, or a woman and infant who were across the street from Pickett during the incident. *Id.* at 10. Plaintiffs assert that Pickett did not raise or point his pellet gun at Villarreal before he was shot, but rather was attempting to throw his gun on the ground in compliance with commands he was given to drop the gun. ECF No. 19 at 7. Plaintiffs also argue that under the circumstances surrounding the incident, Pickett posed no imminent threat to Villarreal or other persons. ECF Nos. 1 at 11-12, and 19 at 15.

In their Original Complaint, the Plaintiffs sued Villareal under 42 U.S.C. § 1983 for use of excessive force in violation of Pickett's Fourth Amendment rights and the City for its policies or customs of inadequate training, supervision, discipline, and screening that resulted in Villareal's unlawful shooting. The Plaintiffs originally asserted a claim against Perryton Chief of Police William Hill ("Hill"), but the parties voluntarily stipulated to the dismissal of those claims with prejudice. ECF No. 12. Defendants Villarreal and the City now move for summary judgment. The motions and objections have been fully briefed and are ripe for determination.

## II.    LEGAL STANDARD

### A.    Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when the pleadings and evidence illustrate that no genuine issue exists as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Slaughter v. Southern Talc Co.*, 949 F.2d 167, 170 (5th Cir. 1991). Disputes concerning material facts are genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). An issue is "material" if it involves a fact that might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248; *Burgos v. Southwestern Bell Telephone Co.*, 20 F.3d 633, 635 (5th Cir. 1994). "The movant bears the

burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986)).

When a movant carries his initial burden, the burden then shifts to the nonmovant to show that the entry of summary judgment is inappropriate. *Celotex*, 477 U.S. at 322-24; *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Although the nonmovant may satisfy this burden by tendering depositions, affidavits, and other competent evidence, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden," *Douglass*, 79 F.3d at 1429, as "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Merely colorable evidence or evidence not significantly probative, however, will not defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 249-50. Furthermore, a mere scintilla of evidence will not defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252; *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

Summary judgment evidence is viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). In addition, factual controversies are resolved in favor of the nonmovant, but only when both parties have submitted evidence of contradictory facts, thus creating an actual controversy. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In the absence of any proof, however, the Court does not assume that the nonmovant could or would prove the necessary facts. *Id.*

In making its determination on the motion, the Court looks at the full record including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. Fed. R. Civ. P. 56(c);

4

*Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). However, the Court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The movant's motion for summary judgment will be granted only if he meets his burden and the nonmovant fails to make the requisite showing that a genuine issue exists as to any material fact. Fed. R. Civ. P. 56(e)(2).

### B.    Qualified Immunity

"Qualified immunity shields government officials performing discretionary functions from liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (citations omitted). To overcome the defense of qualified immunity, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citations omitted). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' [such] that every 'reasonable official would have understood that what he is doing violates that right.'" *Id.* at 731 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The Court may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id.* The

evidence still is viewed in the light most favorable to the plaintiff. *See Freeman v. Gore*, 483 F.3d 404, 410–11 (5th Cir. 2007).

## III.    ANALYSIS

### A.    Claim against Villarreal

Plaintiffs sue Villarreal for violating Pickett's Fourth Amendment right to be free from excessive force pursuant to 42 U.S.C. § 1983. ECF No. 1 at 10. Villarreal asserts the defense of qualified immunity. ECF No. 16 at 8. "An officer's use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Hatcher v. Bement*, 676 F. App'x 238, 242 (5th Cir. 2017) (citation and quotation marks omitted).

To state a claim for excessive force against a police officer, a plaintiff must demonstrate "(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009) (citations omitted). "An officer's use of deadly force is presumptively reasonable when the officer has reason to believe that the suspect poses a threat of serious harm to the officer or to others." *Id.* (citations omitted). The court must determine the reasonableness of the deadly force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). This inquiry "requires careful attention to the facts and circumstances of each particular case, including (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. "Excessive force claims are [thus] necessarily fact-intensive . . . [and depend] on the facts and circumstances of each particular case." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (per curiam) (citations and quotation marks omitted).

Seconds after he arrived at the scene, Villarreal began firing his gun at Pickett. If Villarreal's version of events were credited, his decision to begin shooting at Pickett was objectively reasonable. Villarreal claims that he shot his gun in response to Pickett crouching down in a "shooter's position" and raising a handgun from his waist toward Villarreal. ECF No. 16 at 6. If that were the case, Villarreal "ha[d] reason to believe that the suspect pose[d] a threat of serious harm to the officer or to others." *Ontiveros*, 564 F.3d at 382 (citations omitted). Accordingly, a reasonable officer could have used deadly force to defend himself in such a situation. *See Ontiveros*, 564 F.3d at 382. However, Plaintiffs have offered evidence that, if credited, contradicts this account. According to Plaintiffs, the evidence shows that Pickett never pointed his gun at Villarreal, but instead was attempting to throw the gun on the ground in compliance with commands the police officers gave him. ECF No. 19 at 7. Thus, Plaintiffs contend it was unreasonable for Villarreal to have perceived an imminent threat justifying the use of deadly force. ECF Nos. 1 at 11-12 and 19 at 15.

### 1.    *Constitutional Violation*

Pointing to the side by side analysis of Steward's dash-cam video and Villarreal's body-cam video, Plaintiffs argue that at the exact moment Villarreal shot Pickett, Pickett had already thrown his pellet gun down as he was attempting to lie on the ground. ECF No. 19 at 12. John C. Laughlin, an expert witness retained by Plaintiffs to analyze the video data during the incident and determine the consistency of this data with the officers' statements, concluded in his report that Pickett's arm swung forward in an underhand movement as he continued to crouch at the time of the first shot. ECF No. 13 at 12. The gun slid toward Villarreal and Odom. *Id.* Laughlin further noted that, in addition to complying with the officers' commands at the time the first shot was fired, Pickett had at no time extended his hand holding the gun toward Villarreal. *Id.* Upon

7

reviewing the videos taken of the incident, Villarreal initially agreed with Plaintiffs that Pickett had not raised and pointed the pellet gun toward him. ECF No. 20 at 59, p. 166 at ll.1-5. Additionally, Villarreal admitted that Pickett had not advanced toward him at any point or attempted to close the distance between them. *Id.* at 45, p. 109 at ll. 3-8.

Defendants contend that Villarreal's decision to shoot Pickett was objectively reasonable because Pickett posed an immediate, serious threat to the officers and the woman and infant across the street. ECF No. 16 at 6. Claiming that Pickett failed to follow the officers' verbal commands and instead raised his gun toward Villarreal, Defendants argue that a reasonable officer could have feared for his life in such a situation and was not required to wait until fired upon to defend himself. *Id.* at 4-5. Defendants also contend that Villarreal's decision to shoot was not an unreasonable or excessive use of deadly force because there is no evidence that Pickett did not reach to his waistband and retrieve a gun. *Id.* at 5.

Although Villarreal states that he was concerned for himself and those nearby, nothing in the record shows or suggests an actual, immediate threat to anyone from an objective perspective. Steward's dash-cam video and Villarreal's body-cam video show Pickett throwing the gun in the direction of Villarreal and Odom in an underhand motion when Villareal fired the first shot. Other than that evidence—which a jury could interpret as threatening in the way Villarreal did, or as Pickett's non-threatening attempt to comply with commands given by multiple officers—the videos do not overtly show that Pickett used the gun to immediately threaten anyone, including Villarreal. While the video evidence does not foreclose the possibility that Pickett pointed the gun toward Villarreal, the videos do not objectively support that fact either. Moreover, a reasonable jury could find based on the videos that Pickett did not have enough control of the gun to brandish it as a weapon, particularly given that his movements may have been an attempt to drop the gun

by an underhand throw. Additionally, a jury could view Steward's testimony that he had felt that he had the situation under control before Villarreal and Odom's arrival as undercutting any testimony from the officers claiming that Pickett posed an immediate threat. ECF No. 17 at 287. This is particularly so given Laughlin's report noting that "Officer Odom, an unarmed officer, beg[an] to leave the relative safety of the area behind the vehicle door to approach the subject," which "may imply that Officer Odom felt that the subject was complying with the officers' commands." ECF No. 13 at 12. Viewed in the light most favorable to the Plaintiffs, a jury could find that Picket did not point his gun at Villarreal and that Villareal was not objectively reasonable in firing his weapon at Pickett.

Defendants rely upon *Salazar-Limon*, *Richardson*, and *Reese* in support of their arguments for summary judgment. *Salazar-Limon v. City of Hous.*, 826 F.3d 272 (5th Cir. 2016); *Richardson v. Conroe*, 582 F.2d 19 (5th Cir. 1978); and *Reese v. Anderson*, 926 F.2d 494 (5th Cir. 1991). However, in all three cases, the individual suspects refused to comply with the officers' orders, thereby causing an objectively reasonable threat of harm to the officers. In *Salazar-Limon*, the plaintiff (1) was in the commission of a crime, *i.e.*, driving while intoxicated; (2) resisted arrest when the officer tried to handcuff him; (3) was ordered to stop and refused to comply; (4) attempted to flee the scene; and (5) reached for his waistband as he was evading the officer. 826 F.3d at 275. Here, Pickett did not resist arrest, attempt to flee the scene, or engage in the commission of a crime.

In *Richardson*, the plaintiff refused to cooperate, became abusive, and drew a gun on the officer. 582 F.2d at 19. After a high-speed chase following a reported robbery, the plaintiff's son in *Reese*, who was shot and killed, repeatedly reached down below the officer's sight line in defiance of the officer's orders to raise his hands. 926 F.2d at 495-96. Defendants here argue that

Pickett pulled the gun from his waistband and raised it toward Villareal, but that fact is disputed. Plaintiffs have produced evidence that Pickett did not raise his gun toward Villareal. Although Plaintiffs' version of the events may not prevail ultimately, the undersigned cannot conclude on this factually disputed record that Villareal is entitled to qualified immunity as a matter of law.

On these facts, there is enough evidence for a reasonable jury to return a verdict for either party. Plaintiffs have adequately identified a genuine dispute of material fact as to whether Villarreal's use of deadly force was objectively unreasonable under clearly established law. This dispute is material because it would not have been reasonable for Villarreal to shoot Pickett if Pickett was complying with commands and had not raised his gun towards Villarreal. *See generally Cole v. Carson*, 935 F.3d 444 (5th Cir. 2019) (affirming district court's denial of summary judgment on excessive force claim upon finding genuine disputes of fact regarding officers' entitlement to qualified immunity); *Lytle v. Bexar Cty., Tex.*, 560 F.3d 404, 417 (5th Cir. 2009) (finding it unreasonable for police officer to use deadly force against person who did not pose sufficient threat of harm to the officer or others); *Smith v. Smith*, 477 F. App'x 240, 241 (5th Cir. 2012) (finding material, genuine fact issue precluded summary judgment because "the reasonableness of that belief [that Smith was holding a gun, not a can] depends on how clearly Smith displayed his hands and how cooperative Smith was with the officers' instructions as Smith was exiting his home"). Viewed in the light most favorable to Plaintiffs, as the Court must do at this juncture, the evidence raises genuine issues of material fact regarding Pickett's actions and the reasonableness of Villarreal's conduct during the incident.

### 2.    *Clearly Established Law*

Having found that a jury could reasonably conclude that Villarreal's use of deadly force was a constitutional violation, the undersigned considers whether the constitutional right that

Villarreal allegedly violated was clearly established at the time of the incident. This inquiry considers the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson*, 555 U.S. at 244 (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)) (internal quotation marks omitted). A right is clearly established when its contours are sufficiently clear that a reasonable official would have understood that what he was doing violated the right in issue. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987). This requirement does not mean that there must be a prior case with identical facts. "The central concept is that of fair warning: The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Kinney v. Weaver*, 367 F.2d 337, 350 (5th Cir. 2004) (en banc) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)) (internal quotation marks omitted). Further, the law should be clear in a more particularized rather than abstract sense such that it is apparent that the official's actions are unlawful based upon pre-existing law. *Anderson*, 483 U.S. at 640.

At the time of Pickett's shooting, it was clearly established that a law enforcement officer may not use deadly force against a person who does not pose a sufficient threat of harm or immediate danger to the officer or to others. *Lytle*, 560 F.3d at 417; *see also Tennessee v. Garner*, 471 U.S. 1, 11 (1985) ("Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failure to apprehend the suspect does not justify the use of deadly force to do so."); *Reyes v. Bridgwater*, 362 F. App'x 403, 409 (5th Cir. 2010) ("The cases on deadly force are clear: an officer cannot use deadly force without an immediate serious threat to himself or others."). The threat of physical harm must be immediate. *Garner*, 471 U.S. at 11. As discussed above, evidence presented by Plaintiffs support their claim that Villarreal did not have

probable cause to believe Pickett posed an immediate threat of death or serious physical harm. Shooting Pickett under that circumstance would violate clearly established law at the time.

Additionally, it is undisputed that at the time he was shot Pickett had not committed a crime, actively resisted arrest, or attempted to flee. Plaintiffs have presented evidence showing that Pickett had instead raised his hands, dropped his cap and drink, and threw the pellet gun on the ground in his attempt to comply with the verbal commands given by multiple officers by. ECF Nos. 16 at 6, 19 at 13, and 17 at 21, Enhanced Video. The law was clearly established as of May 2, 2016 that it was a constitutional violation to shoot a person who was complying with commands given by police officers and who did not point his gun at the officers. *See Graves v. Zachary*, 277 F. App'x 344, 349 (5th Cir. 2008). ("It does not take a specific case for an officer to know that he cannot shoot a compliant suspect"). Therefore, by using deadly force against Pickett, who was compliant and not threatening during the incident according to the summary judgment evidence offered by Plaintiffs, Villarreal violated law that was clearly established at the time.

In sum, at the time of the shooting, the law was clearly established such that Villarreal would know that use of deadly force against a compliant, non-threatening person would violate that person's constitutional rights. Accordingly, the undersigned determines that Villareal is not entitled to qualified immunity on this point.

### B.    Claims against the City of Perryton

A municipality may not be held liable for the acts or omissions of its actors under 42 U.S.C. § 1983 merely based on *respondeat superior*. *See Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Instead, a municipality only may be liable for its unconstitutional policies or customs. *Monell*, 436 U.S. at 691. To establish municipal liability, a plaintiff must prove: (1) an official policy or custom, of

which (2) a policymaker had actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom. *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002) (citing *Piotrowski*, 237 F.3d at 578).

Plaintiffs contend that the City is liable under § 1983 because it failed to adequately train, supervise, and discipline its employees, which led to Villarreal's use of excessive force against Pickett. ECF No. 1 at 12-16. They also claim that the City failed to properly screen Villarreal prior to his employment thus causing the violation of Pickett's constitutional rights. *Id.* In their Motion for Summary Judgment, Defendants argue that Plaintiffs cannot present evidence sufficient to establish the existence of each element of their claims. ECF No. 16 at 17-18.

### 1.   *Failure to Train, Supervise, and Discipline*

In support of their claim that the City failed to adequately train, supervise, and discipline its employees, Plaintiffs argue that the summary judgment evidence "reveals a total lack of training on the use of deadly force." ECF No. 19 at 23. Specifically, they allege that there is no evidence that there was any requirement that Villarreal be tested over his competence of judgment in the use of deadly force. *Id.* Defendants argue to the contrary that the evidence shows that Villarreal had extensive training in this area. ECF No. 16 at 14.

### a.   **Official Policy or Custom**

To hold a municipality liable, a plaintiff must first demonstrate the existence of an official policy or custom. *Piotrowski*, 237 F.3d at 579. "Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but also may arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Piotrowski*, 237 F.3d at 579). Although a "single decision by a policy maker may, under

13

certain circumstances, constitute a policy for which a municipality may be liable[,] ... this 'single incident exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is the final policymaker." *Valle v. City of Hous.*, 613 F.3d 536, 541-42 (5th Cir. 2010) (citations, brackets, and some internal quotation marks omitted).

Plaintiffs have not identified any evidence raising an inference that the Perryton Police Department had policies or customs of failing to adequately train, supervise, or discipline police officers. The Fifth Circuit has held that "when officers have received training required by Texas law, the plaintiff must show that the legal minimum of training was inadequate." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381-82 (5th Cir. 2010). Plaintiffs have not shown that the Perryton Police Department's training requirement fell below the state-mandated level of training for officers on the appropriate use of deadly force, nor have they identified summary judgment evidence that responds to the City's argument that its police officers received adequate training in using their weapons. Notwithstanding Plaintiffs' argument that the problem lies not in the City's failure to require training on the issue of how, but when, to use deadly force, Defendants have shown that the training Villarreal received satisfied state requirements, which is a factor that counsels against a finding that the City failed to train him adequately. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir. 2010). Additionally, Plaintiffs have produced no evidence of a pattern of similar events occurring that would have put the City on notice of a need for further training, nor have they shown why different training procedures should have been obvious to the City.

As with their claims that the City failed to adequately train Villareal, the Plaintiffs have failed to produce sufficient summary judgment to prove or raise an inference that the City had policies or customs of failing to supervise or discipline its employees. Therefore, the undersigned

concludes that Plaintiffs have failed to satisfy the first prong necessary for a finding of municipal liability on their claim the City failed to train, supervise, and discipline Villareal properly.

### b. Policymaker with Actual or Constructive Knowledge

To establish a claim for municipal liability, a plaintiff also must show that "[a]ctual or constructive knowledge of [a] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority." *Piotrowski*, 237 F.3d at 579 (internal quotation marks and citation omitted).

Here, rather than offering evidence that Chief Hill had actual or constructive knowledge of the alleged policies or customs, Plaintiffs claim without support that he was the applicable policymaker at the time of the incident; that he had actual or constructive knowledge of the alleged policies and customs regarding police procedures; and that he acted with deliberate indifference to Pickett's constitutional rights and those of others similarly situated. ECF No. 1 at 13-14. Because their complaint only speculates that Hill knew about, or had final authority to set, the alleged policy or custom at issue, Plaintiffs have not raised a material fact issue whether Hill was the official policymaker of policies or customs involving adequate training, supervision, and discipline.

### c. Constitutional Violation Whose "Moving Force" is that Policy or Custom

Finally, a plaintiff must establish that the alleged policies or customs were the "moving force" behind the asserted constitutional violations. Thus, there must be a "direct causal link" between the policy or custom and the violation. *Piotrowski*, 237 F.3d at 580 (citing *Monell*, 436 U.S. at 694). Further, a plaintiff "must show that the municipal action was taken with the requisite degree of culpability." *Valle*, 613 F.3d at 542. Specifically, a plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences.

A showing of simple or even heightened negligence will not suffice." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 407 (1997).

Here, Plaintiffs have failed to present summary judgment evidence of a policy or custom relating to failure to train, supervise, and discipline. Consequently, they have not raised a genuine issue of material fact as to whether any policy or custom of the City caused the violation of Pickett's constitutional rights. Plaintiffs also allege that municipal liability is proper under the "single incident exception" which may establish the City's deliberate indifference for failure to properly train the officers. ECF No. 19 at 20. Under certain circumstances, a single decision by a municipal employee not to train an individual officer may form the basis of municipal liability apart from a pattern of previous constitutional violations. *See Brown*, 520 U.S. at 410; *see also Bryan*, 219 F.3d at 459. To rely on this exception, Plaintiffs "must prove that the 'highly predictable' consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the 'moving force' behind the constitutional violation." *Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005) (citing *Bryan*, 219 F.3d at 461). Plaintiffs have failed to establish that this "extremely narrow" exception applies in this case as they have not raised a material fact issue that would support a finding that the violation of Pickett's constitutional rights was the "highly predictable consequence" of the City's failure to train its employees. Accordingly, Plaintiffs have failed to satisfy the third prong necessary for a finding of municipal liability.

### 2.    *Failure to Screen*

Plaintiffs also argue that the City's inadequate screening policies led to the violation of Pickett's constitutional rights. ECF No. 1 at 13. Specifically, they claim that the City had a "practice of hiring officers with records of excessive force, excessive alcohol use and erratic

behavior," and contend that Chief Hill failed to adequately inquire into complaints filed against Villarreal during his prior employment as a police officer with the Laredo Police Department. *Id.* at 9, 13.

### a. Official Policy or Custom

Plaintiffs do not raise a material fact issue suggesting the City had a policy or custom of not properly screening its employees prior to hiring them. Instead, they rely on the facts of this case and highlight the violations Villarreal was found to have committed during his time at the Laredo Police Department. Some of those offenses included (1) while off-duty, pointing a weapon at a suspect and telling him to "smile;" (2) arresting and detaining a nine-year-old child; and (3) lying to a police captain and a sergeant about facts and evidence related to an investigation. ECF No. 19 at 21-22. Plaintiffs claim that Villarreal also used excessive force at other times while employed by the City, including using a taser on a man on his front porch and jumping on a person's back during a traffic stop for failing to use a turn signal and pointing his gun in the person's face after the altercation. *Id.* at 22. Plaintiffs allege that Villarreal's prior record provided abundant evidence of a proclivity to commit the specific constitutional violation described in this case. *Id.* at 20. Defendants argue that these prior acts are irrelevant, were unknown to the City prior to this incident, were dissimilar to this incident, and did not involve injury to a third party. ECF No. 16 at 17.

In *Brown*, the Supreme Court held that the link between a policymaker's allegedly inadequate hiring decision and the injury alleged must be carefully tested to caution against holding the City liable on a *respondeat superior* theory. 520 U.S. at 410. A plaintiff "must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences." *Id.* at 407 (citations omitted). Hence, "a finding of culpability. . . must

depend on a finding that this officer was highly likely to inflict the particular injury suffered by the plaintiff." *Id.* at 412 (emphasis in original). *Brown* requires "that the plaintiff's injury be the 'plainly obvious consequence' of the hiring decision." *Snyder v. Trepagnier*, 142 F.3d 791, 797 (5th Cir. 1998).

The undersigned finds that the city's hiring of Villarreal was not unreasonable under clearly established law, despite his prior questionable conduct. Although Villarreal was involved in a number of incidents during his tenure with the police departments in Laredo and Perryton, these incidents, singularly or as a group, would not lead a reasonable police officer to conclude that the obvious consequence of hiring Villarreal would be that he would use deadly force against a third person, because none of the incidents involved the use of deadly force. Pointing a weapon at a suspect and telling him to smile, arresting and detaining a nine-year-old child, and lying about facts related to an investigation do not foretell the use of deadly force against others. Nor does Villareal's jumping on a person's back during a traffic stop and pointing his gun in the person's face after an altercation strongly imply that he may later use deadly force against a third party. The incident of Villarreal's tasing a man on his front porch may have involved the use of excessive force, but this complaint is too vague to demonstrate a strong link to any subsequent incident of deadly force such as the incident here.

Ample authority illustrates why there is no strong link between Villarreal's prior actions and his use of excessive force against Pickett. In *Aguillard v. McGowen*, 207 F.3d 226 (5th Cir. 2000), a deputy sheriff, McGowen, was involved in a deadly shooting while on duty. McGowen's record showed, among other things, that (1) he previously had threatened the mother of a juvenile with arrest, (2) he had meddled in this mother's supervision of the child while he was off duty, (3) colleagues had reported that he wanted to "ride where the women were," (4) a female colleague

stated she did not want to ride with him under any circumstances, and (5) there was a report that he assaulted and pistol-whipped a teenage boy who was driving his car around McGowen's apartment complex. Despite these facts, the Fifth Circuit observed that "McGowen had never wrongfully shot anyone before, nor did his record reveal him to be likely to use excessive force in general or possess a trigger-happy nature in particular." *Id.* at 230. The court concluded that "[w]hile the County may have been negligent in its employment decision, the magnitude of its error d[id] not reach constitutional cognizance." *Id.* at 231.

In *Gros v. City of Grand Prairie*, 209 F.3d 431, 432 (5th Cir. 2000), the plaintiffs alleged that the police chief violated their constitutional rights by hiring an officer who had sexually assaulted them. In support of their claim that the police chief was deliberately indifferent to their constitutional rights in hiring Rogers, the plaintiffs pointed to several incidents contained in Rogers' pre-employment file. One complaint involved Rogers's threatening and improperly drawing his weapon during a traffic stop and statements by another officer that Rogers was "a little rash in his demeanor and his personality tended to aggravate a situation" and "was almost to the point of being badge heavy." *Id.* at 434. However, the Fifth Circuit found that the evidence presented did not rise to the level of a constitutional violation because Rogers had never sexually assaulted, sexually harassed, falsely arrested, improperly searched or seized, or used excessive force against a third party. Thus, the court held that the reprimands and complaints against Rogers did not meet the requirement of a "strong" causal connection between his background and the specific constitutional violations alleged. The Grand Prairie police chief may have been negligent in failing to adequately review Rogers's record and in ultimately deciding to hire him, but the facts did not provide enough evidence of deliberate indifference to constitutional rights to be actionable. *Id.* at 435.

As in *Aguillard* and *Gros*, there is no strong link here between Villarreal's prior actions and his alleged use of excessive force against Pickett. Although Chief Hill may have been negligent in failing to adequately review Villarreal's records and in ultimately deciding to hire him, the facts still do not provide legally sufficient evidence of deliberate indifference to constitutional rights. Thus, the undersigned finds that Plaintiffs have failed to identify hiring decisions so inadequate as to suggest that the City was deliberately indifferent to a known or obvious consequence of following those hiring decisions. Consequently, Plaintiffs failed to satisfy their burden to show that the City had an official policy of inadequate screening, and Defendant's Motion for Summary Judgment should be granted on the claim that the City had a policy or custom of inadequately screening police officer candidates.

### b.  Policymaker with Actual or Constructive Knowledge

As discussed above, Plaintiffs have not raised a material fact issue whether Chief Hill was the official policymaker. Plaintiffs fail to allege any state or local law or evidence of custom that would allow the undersigned to reasonably infer that Chief Hill had actual or constructive knowledge of a City policy or custom of inadequately screening its employees prior to hiring them. Accordingly, Plaintiffs have failed to raise a genuine issue of material fact regarding this prong.

### c.  Constitutional Violation Whose "Moving Force" is that Policy or Custom

Here, Plaintiffs have failed to present evidence of a policy or custom relating to failure to screen. Thus, Plaintiffs have not raised a genuine issue of material fact as to whether any policy or custom of the City caused the violation of Pickett's constitutional rights. Accordingly, Plaintiffs have failed to satisfy the third prong necessary for a finding of municipal liability.

The Plaintiffs have failed to show that there is a genuine issue for trial on their claims that the City failed to adequately train, supervise, and discipline its employees. Likewise, they have

failed to meet their burden to show their entitlement to trial on their claim that the City is liable for failing to adequately screen potential employees such as Villareal. As a result, the undersigned concludes that the City's Motion for Summary Judgment should be granted as to Plaintiffs' § 1983 claims against the City.

## IV.    CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that Judge Kacsmaryk **GRANT** in part and **DENY** in part Defendants' Motion for Summary Judgment, ECF No. 15. He should **DENY** Defendants' Motion as it relates to Plaintiffs' claims against Villareal and **GRANT** it on their claims against the City of Perryton.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

Signed November 27, 2019.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE