IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| GREGORY and KRISTI PICKETT, Individually and as Next Friends of SCOTT PICKETT, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | No. 2:18-CV-75-Z-BP |
| CITY OF PERRYTON, TEXAS and SERGEANT HECTOR VILLARREAL, | § § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

**HISTORY**

On April 8, 2019, Defendants filed a "Motion for Summary Judgment of Defendants City of Perryton, Texas and Sergeant Hector Villarreal" (ECF No. 15), with a brief and an appendix in support. (ECF Nos. 16–17). On April 29, Plaintiffs filed a response to Defendants' motion (ECF No. 18), with a brief and an appendix in support. (ECF Nos. 19–20). On May 13, Defendants filed a reply to Plaintiffs' response (ECF No. 24), with a brief and an appendix in support. (ECF Nos. 25–26). On May 20, Defendants filed "Defendants' Motion to Exclude Certain Testimony of Plaintiffs' Expert John C. Laughlin" (ECF No. 27), with a brief and an appendix in support (ECF Nos. 28–29). On June 10, Plaintiffs filed a response (ECF No. 30), with a brief and an appendix in support. (ECF Nos. 31–32). On November 27, the United States Magistrate Judge entered findings and conclusions on Defendants' motion to exclude testimony. (ECF No. 34). The Magistrate Judge RECOMMENDS that Defendants' motion be DENIED. No objections to the findings, conclusions, and recommendation have been filed. On the same day, the Magistrate Judge also

entered findings and conclusions on Defendants' motion for summary judgment. (ECF No. 35). The Magistrate Judge RECOMMENDS that Defendants' motion be GRANTED in part and DENIED in part. On December 11, Defendants filed objections to the findings, conclusion, and recommendation (ECF No. 36), with a brief in support. (ECF No. 37).

SUMMARY

After making an independent review of the pleadings, files, and records in this case, and the findings, conclusions, and recommendation of the Magistrate Judge regarding Defendants' motion for summary judgment, and Defendants' objections, the Court concludes that the findings and conclusions are correct, in part. It is therefore ORDERED that the findings, conclusions, and recommendation of the Magistrate Judge are ADOPTED in part and that Defendants' motion for summary judgment (ECF No. 15) is GRANTED in its entirety. Because the granting of Defendants' motion for summary judgment fully disposes of this case, Defendants' motion to exclude testimony (ECF No. 27) is MOOT.

FACTS

Gregory and Kristi Pickett ("Plaintiffs"), individually and as next friends of their son Scott Pickett ("Pickett"), bring this suit against Sergeant Hector Villarreal ("Villarreal") and the City of Perryton, Texas ("the City") for damages due to injuries Pickett sustained during an arrest on Monday, May 2, 2016. (ECF No. 1).

On that morning, Perryton Police Department Officer Scott Steward ("Steward") was on duty as a patrol officer in the area of 15th Street and Fordham in Perryton, Texas. (ECF No. 1 at 5). At approximately 7 a.m. (CDT), Steward responded to a report that a male subject wearing camouflage and body armor was walking towards the junior high school, waving a handgun. (ECF Nos. 1 at 5, 17 at 9, 38–39). Soon thereafter, Steward observed Pickett wearing camouflage, near

9th Street and Fordham Street, walking in the direction of the aforementioned junior high school. *Id.* Steward parked his vehicle, drew his firearm, and verbally commanded Pickett to stay where he was and to "get on the ground." *Id.* In response to Steward's verbal commands, Pickett stopped walking, then raised his hands in the air. (ECF No. 19 at 13).

Seconds later, Villarreal arrived at the scene driving a patrol car carrying one passenger, Officer Joey Odom ("Odom"). Upon arrival, both Villareal and Odom exited the patrol car. (ECF Nos. 16 at 6 and 20 at 19, Villarreal Body-Cam Video). Upon exiting the patrol car, Villarreal visually identified a woman carrying her infant child outside a nearby house and expressly told the woman to "go inside now!" (ECF No. 20 at 19, Villarreal Body-Cam Video). At this same time, Pickett removed his ball cap and dropped a drink container, in apparent response to Steward's verbal commands. (ECF Nos. 19 at 13, 17 at 24, Enhanced Video, 20 at 20, Side by Side Video). Pickett then turned and faced Villarreal and Odom as they too verbally commanded him to "drop it," and to lay "on the ground!" (ECF No. 17 at 24, Enhanced Video). Pickett then began to crouch down to the ground — while removing a black handgun from his pants pocket. *Id.*

The parties dispute what happened next.

Plaintiffs aver that Pickett did *not* raise or point his handgun at Villarreal. Instead, Plaintiffs argue that Pickett threw his handgun to the ground in an attempt to comply with the commands given to him. *Id.* Specifically, Plaintiffs aver that Pickett "threw" the handgun in an underhand motion in the general direction of Villarreal and Odom. (ECF No. 1 at 5). Then, Plaintiffs claim, Villarreal fired at Pickett eight times, (ECF No. 20 at 19, Villarreal Body-Cam Video), striking him once in his shoulder and once in his thigh. (ECF No. 16 at 6).

Defendants agree that the aforementioned events *occurred* but dispute the *order* in which they transpired. *Id.* at 7. Specifically, Defendants argue the following sequence: (1) Pickett

crouched down in a "shooter's position"; (2) Pickett pulled a handgun from his pants pocket; (3) Pickett raised the handgun in the direction of the officers; (4) Villarreal began firing before Pickett released the handgun; and (5) Pickett released the handgun, which dropped to the ground. *Id.*; (ECF No. 37 at 7–8).

Following his arrest, it was ascertained that Pickett was twenty (20) years old. (ECF No. 1 at 4). It was also ascertained that he had been diagnosed with cerebral palsy and had the mental capacity of a ten- to twelve-year-old child. (ECF No. 19 at 7). The morning of his arrest, he walked to a local convenience store to purchase a soft drink (ECF No. 1 at 4). Because Pickett had visited the convenience store on prior occasions and was scared of a nearby barking dog, he carried a pellet gun in his pants pocket for protection. *Id.* The parties do not dispute that said pellet gun *resembled* a black handgun. (ECF No. 16 at 6).

In their original complaint, Plaintiffs sued (1) Villarreal under 42 U.S.C. § 1983 for excessive force in violation of Pickett's Fourth Amendment rights, and (2) the City for its policies or customs of inadequate training, supervision, discipline, and screening that resulted in Villarreal's allegedly unlawful shooting. (ECF No. 1 at 10–16). Villarreal asserts the defense of qualified immunity. (ECF No. 16 at 8). Because the Court fully agrees with the Magistrate Judge's findings, conclusions, and recommendation as they pertain to the City and consequently ADOPTS them in their ENTIRETY, the Court's analysis to follow will focus only on *Villarreal*.

**ANALYSIS**

To assess Villarreal's assertion of qualified immunity, the Court restates the relevant Supreme Court and Fifth Circuit law concerning summary judgment and qualified immunity. This law is then applied to the facts of this case:

**I. Summary Judgment**

In a civil case, "[a] party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought." FED. R. CIV. PROC. 56(b). When a summary judgment movant does not have the burden of proof on a claim, it may obtain summary judgment by pointing the Court to the *absence* of evidence on any essential element of the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once it does so, the nonmovant must go beyond its pleadings and designate specific facts demonstrating that there is a genuine issue of material fact for trial. *See id.* at 324–25; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). A genuine issue of material fact exists if the evidence is such that a reasonable trier of fact could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is mandatory where the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

To meet this burden, the nonmovant must show more than "some metaphysical doubt as to the material facts," or by "conclusory allegations," "unsubstantiated assertions," or "only a scintilla of evidence." *Id.* at 1075 (internal marks omitted). However, summary judgment evidence is to be viewed in the light most favorable to the nonmovant. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1994).

**II. Qualified Immunity**

Under 42 U.S.C. § 1983, private citizens may sue public officials in federal courts for violations of their federal statutory or constitutional rights. *Monroe v. Pape*, 365 U.S. 167, 171 (1961). However, public officials enjoy an immunity from liability under Section 1983 known as *qualified immunity*. When properly applied, qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The Supreme Court has articulated a two-part test for determining if a public official is entitled to qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). First, the Court must determine whether the defendant's conduct violated a federal right. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). Second, the Court must determine "whether the right in question was 'clearly established' at the time of the violation." *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

Regarding the second part, "[g]overnmental actors are shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* More precisely, for a violation of clearly established federal rights to occur, "[p]re-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion *for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances*." *Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir. 1997) (emphasis added). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (citing *Malley*, 475 U.S. at 341). In essence, "the salient question . . . is whether the state of the law" at the time of an incident provided 'fair warning' to the defendants 'that their alleged [conduct] was unconstitutional.' *Tolan*, 572 U.S. at 656 (citing *Hope*, 536 U.S. at 741).

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005)). Specifically, when qualified immunity has been raised, "[t]he moving party is not required to meet its summary judgment burden for a claim of immunity." *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (internal marks omitted) (citing *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003)). Instead, "[i]t is sufficient that the movant in good faith pleads that

6

[he] is entitled to qualified immunity. Once the [movant] asserts this affirmative defense, the burden shifts to the plaintiff to rebut it." *Id.* (internal marks and emphasis omitted); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (alternation in original) ("Once qualified immunity is asserted, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense"); *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008) (noting that when a government official pleads qualified immunity, the plaintiff must "rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct").

**III. Application**

Here, the Court finds that Villarreal is entitled to qualified immunity because Plaintiffs have failed to show that Villarreal violated a *clearly established* constitutional right of Pickett. Specifically, Plaintiffs have failed to show that *no* reasonable officer could agree with Villareal's response to Pickett's conduct. The Court presents its analysis for this finding by considering each of the two prongs of the qualified immunity test.

> ### A. *There Is a Genuine Issue of Material Fact That Villarreal Violated Pickett's Fourth Amendment Rights*

The Court agrees with the Magistrate Judge regarding the first prong of the qualified immunity test. Specifically, the Court concludes that Plaintiffs have raised a genuine issue of material fact that Villarreal violated Pickett's Fourth Amendment rights.

"An officer's use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Hatcher v. Bement*, 676 F. App'x 238, 242 (5th Cir. 2017) (internal marks and citations omitted). To state a claim for excessive or deadly force against a police officer, a plaintiff must demonstrate "(1) an injury (2) which resulted directly and only from a use of force

7

that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009) (internal marks and citations omitted). "An officer's use of deadly force is presumptively reasonable when the officer has reason to believe that the suspect poses a threat of serious harm to the officer or to others." *Id.* (citations omitted). A court must determine the reasonableness of the deadly force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). This inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. "Excessive force claims are necessarily fact-intensive; whether the force used is excessive or unreasonable depends on the facts and circumstances of each particular case." *Deville v. Marcantel*, 567 F.3d 156, 167 (5 Cir. 2009) (internal marks omitted).

In excessive force cases involving a suspect's potential possession of a firearm, the Fifth Circuit has stated that '[t]he Fourth Amendment does not require police officers to wait until a suspect shoots him to confirm that a serious threat of harm exists.'" *Ramirez v. Knoulton*, 542 F.3d 124, 130 (5th Cir. 2008) (quoting *Elliott v. Leavitt*, 99 F.3d 640, 643 (4th Cir. 1996)); *see also Reese v. Anderson*, 926 F.2d 494, 500–01 (5th Cir. 1991) (finding that an officer's shooting a driver following a high-speed car chase in which the driver repeatedly reached down in the car in defiance of the officer's orders was not an excessive use of force, even though the driver turned out to be unarmed); *Manis v. Lawson*, 585 F.3d 839, 842–45 (5th Cir. 2009) (finding that an officer's shooting an intoxicated driver who repeatedly reached underneath the front seat of his car despite being ordered to show his hands was not an excessive use of force, even though the driver

8

turned out to be unarmed); *Salazar-Limon v. City of Houston*, 826 F.3d 272, 278 (5th Cir. 2016) (finding that an officer's shooting a suspect being interrogated for drunk driving who, in defiance of the officer's orders, turned and walked away from the officer while reaching under his shirttail was not an excessive use of force, even though the suspect was unarmed).

Here, the Court finds that there is a genuine issue of material fact as to whether Pickett's Fourth Amendment right to be free from the use of excessive force was violated. Plaintiffs have offered evidence from the side-by-side analysis of Steward's dash-cam video and Villarreal's body-cam video to show that at the exact moment that Villarreal shot Pickett, Pickett had already thrown aside his pellet gun. (ECF No. 19 at 12). John C. Laughlin, an expert witness for Plaintiffs who analyzed the video data to compare it with the officers' statements, concluded in his report that Pickett's arm swung forward in an underhand motion at the time of the first shot. (ECF No. 13 at 12).

In a motion for summary judgment, all evidence must be viewed in a light most favorable to the non-moving party. Under such a light, a reasonable jury *could* find that the force that Villarreal used was clearly excessive and clearly unreasonable. Specifically, it could find that Pickett had thrown aside his pellet gun prior to being shot and thus posed no immediate threat of serious harm to Villarreal or others. It does not *have* to find this, of course. But if it *could* find it, then Plaintiffs have successfully met their burden for the first part of the qualified immunity test.

The *Ramirez*, *Reese*, *Manis*, and *Salazar-Limon* cases do not alter this analysis. In those cases, the police officers in question shot the suspects only after they had *disobeyed* prior commands. Because of their defiant conduct in placing their hands or otherwise moving outside of the officers' eyesight, the officers had reason to believe that the suspects were armed — even though later inspection showed otherwise. By contrast, Pickett visibly complied with Steward's

9

order to "stay" and did not obviously *disobey* Steward and Villareal's orders to move to "the ground." Accordingly, the Court FINDS that Plaintiffs *have* raised a genuine issue of material fact that Villareal violated Pickett's Fourth Amendment right to be free from the use of excessive force.

### *B. Villarreal's Use of Deadly Force Did Not Violate Clearly Established Law*

Turning to the second prong of the qualified immunity test, however, the Court concludes that Villarreal's use of deadly force did not violate *clearly established law*. In other words, it is false that *no* reasonable officer in Villarreal's situation would have acted as Villarreal did.

To constitute the violation of "clearly established law," the"[p]re-existing law must dictate, that is, truly compel — not just suggest or allow or raise a question about — the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *See Pierce*, 117 F.3d at 882 (internal marks and citations omitted). To determine this, a court must consider the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson*, 555 U.S. at 244 (internal marks omitted) (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)). A right is clearly established when "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "This is not to say that an official is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id*. (citations omitted). A necessary consequence of this is "that clearly established law should not be defined at a high level of generality," but instead "must be particularized to the facts of the case. Otherwise, plaintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging

violation of extremely abstract rights." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (internal marks and citations omitted).

In excessive force cases, federal courts once held that it was a violation of clearly established law to use deadly force on a suspect "[w]here the suspect poses no immediate threat to the officer and no threat to others." *See Tennessee v. Garner*, 471 U.S. 1, 11 (1985). However, in light of the Supreme Court's holding in *Mullenix* and subsequent Fifth Circuit jurisprudence, the general test from *Garner* is no longer appropriate. *See* 136 S. Ct. 305 (2015); *Mason v. Faul*, 929 F.3d 762, 766 n.1 (5th Cir. 2019) ("If this kind of quick dismissal of qualified immunity, based solely on the general test set forth in *Tennessee v. Garner*, 471 U.S. 1 (1985), was ever good law, it is clearly no longer good law in light of *Mullenix*, which called such over-reliance on *Garner* a 'mistake'"). This is because *Garner* and the jurisprudence following it "lay out excessive-force principles at only a general level." *See White*, 137 S. Ct. at 552 ("Instead, the [panel majority whose judgment was vacated] relied on *Graham*, *Garner*, and their Court of Appeals progeny, which—as noted above—lay out excessive-force principles at only a general level. . . . For that reason, we have held that *Garner* and *Graham* do not by themselves create clearly established law outside an obvious case.") (internal marks and citations omitted).

At the time of Pickett's shooting, there was no clearly established law that would compel every reasonable police officer in the same situation as Villarreal to conclude that shooting Pickett was unlawful. Merely knowing that it is unlawful to use deadly force on a suspect who poses no immediate threat to the officer and no threat to others is insufficient for reasonable officers to draw such a conclusion. Although Pickett *in fact* may have been complying with law enforcement when he was shot, an officer in Villarreal's situation could have reasonably misunderstood Pickett to be crouching into a shooter's position and retrieving his handgun to fire — rather than to comply.

Even if Pickett threw the handgun *before* Villarreal fired, the time period between the two events is virtually instantaneous. An officer in Villarreal's situation could have reasonably made the split-second decision to fire at Pickett, as it would take time for an officer to realize that Pickett was *relinquishing* control of his handgun — not *aiming* his firearm to fire at law enforcement. Furthermore, Pickett matched the dispatcher's description of a camouflaged, body-armored suspect wielding a handgun, marching towards the junior high school.

This conclusion does not conflict with the Court's previous analysis of the first prong of the qualified immunity test. There, the Court held that a reasonable jury *could* find that Villarreal acted unreasonably in his use of deadly force. But this is different from — and not inconsistent with — the conclusion that *some* reasonable officer in Villarreal's situation could conclude that shooting Pickett was *not* unlawful.[*] Consequently, the Court FINDS that Villarreal did not violate a clearly established law in using deadly force against Pickett at the scene, under the aforementioned facts and circumstances.

### CONCLUSION

Because Plaintiffs have failed to establish both prongs of the qualified immunity test, they have failed to overcome Villarreal's claim to qualified immunity. The Court therefore FINDS that Villarreal is entitled to qualified immunity, and Defendants' motion for summary judgment (ECF No. 15) is GRANTED in its entirety. Because summary judgment fully disposes of this case, Defendants' motion to exclude testimony (ECF No. 27) is MOOT.

---

[*] The Fifth Circuit has confirmed this conclusion, stating that "[t]here is no inherent conflict between a finding of excessive force and a finding of qualified immunity. In *Brown v. Glossip,* 878 F.2d 871, 873–74 (5th Cir.1989), we squarely held 'that qualified immunity is available as a defense to monetary liability for an objectively unreasonable use of excessive force under the Fourth Amendment.'" *Snyder v. Trepagnier*, 142 F.3d 791, 800 (5th Cir. 1998). Indeed, in *Snyder*, a jury had *actually found* that the defendant violated the Fourth Amendment through the use of excessive force but nevertheless found that he was protected by qualified immunity. *See id.* at 794. *A fortiori*, there is no contradiction between a finding of *a mere genuine issue of material fact* as to the use of excessive force and a finding of qualified immunity.

**SO ORDERED.**

February 4, 2020

_____
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE